IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| PROGRESSIVE MOUNTAIN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MADD TRANSPORTATION, LLC; VICKIE ROBINSON A/K/A VICKIE ROBINSON, as guardian of Ted Owens; IPSCO KOPPEL TUBULARS, LLC <br><br> Defendants. | ) ) ) ) ) ) ) Civil Action File No.: 4:13-cv-00254 ) ) ) ) ) ) ) ) |

## AMENDED PETITION FOR DECLARATORY JUDGMENT

COMES NOW Progressive Mountain Insurance Company ("Progressive"), by and through its undersigned counsel of record, and pursuant to this Court Order dated February 11, 2014 (Doc. 23), hereby amends its Petition for Declaratory Judgment against Defendants Madd Transportation, LLC; Vickie Robinson a/k/a Vickie Robinson, Guardian of Ted Owens; Ipsco Koppel Tubulars, LLC, and alleges as follows:

### PARTIES

1. Plaintiff Progressive is a foreign corporation with its principal place of business in Mayfield Village, Ohio and is thus a citizen of Ohio.

2. Defendant MADD Transportation, LLC ("MADD") is a Georgia corporation with its principal place of business in Garden City, Georgia. MADD may be served at the address of record for its registered agent Mark Williams, 4022 First Street, Garden City, Georgia 31408.

3. The only current member of MADD is Mark Williams who resides in Garden City, Georgia.

4. Defendant Vickie Robinson a/k/a Vickie Robinson ("Robinson"), Guardian of Ted Owens ("Owens"), is a South Carolina resident and may be served at her address of record 1200 Shaw Road, Woodruff, South Carolina 29388.

5. Defendant IPSCO Koppel Tubulars, LLC ("IPSCO") is a limited liability company existing under the laws of the State of Delaware with its principal place of business in Koppel, Pennsylvania. IPSCO may be served at the address of record for its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6. IPSCO is owned by IPSCO Tubulars, Inc., which is incorporated in Delaware and headquartered in Texas. IPSCO Tubulars, Inc. is the sole member of Defendant IPSCO.

## JURISDICTION

7. The Court has jurisdiction over this action pursuant to 28 United States Code Section 1332 because Plaintiff is a citizen of a different state than all

Defendants, and the matter in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000.00). Plaintiff is a citizen of Ohio. Defendant MADD and its sole member Mark Williams are citizens of Georgia. Defendant Robinson is a citizen of South Carolina. Defendant IPSCO and its sole member are citizens of Delaware. Accordingly, there is complete diversity among the parties to this action, which is sufficient to confer jurisdiction upon this Court pursuant to United States Code Section 1332.

8. The Court further has jurisdiction pursuant to 28 U.S.C. § 2201, in that Progressive is seeking a declaration from this Court regarding the parties' rights and obligations with respect to a policy of commercial automobile liability insurance issued by Progressive, Policy No.:08151396-0, (the "Policy"), with effective dates of coverage from July 19, 2011 to July 19, 2012. (A true and accurate copy of the Policy was attached to the original Petition for Declaratory Judgment as Exhibit "A.")

9. Progressive anticipates that Defendants will contest Progressive's position in regard to the parties' rights and obligations under said Policy and, therefore, a true and actual controversy exists between the parties. Thus, the Court is vested, pursuant to 28 U.S.C. § 2201, with the power to declare the rights and obligations of the parties hereto, and to provide such other relief as may be necessary.

## VENUE

10. Venue is laid in this District pursuant to 28 U.S.C. § 1391 by virtue of the fact that this action seeks the interpretation of a policy of commercial automobile liability insurance issued in the State of Georgia to Defendant MADD.

11. Defendant MADD maintains its principal place of business in Garden City, Chatham County, Georgia.

## PRELIMINARY ALLEGATIONS

### The Subject Accident

12. The action arises from a May 14, 2012 incident involving an independent contractor, Ted Owens, for Progressive's insured MADD Transportation ("MADD"), a Georgia-based interstate motor carrier.

13. MADD had been dispatched by C.H. Robinson to pick up a load of metal pipes from IPSCO for delivery to another destination.

14. MADD assigned the route to Owens, who was to drive from Georgia to Pennsylvania to pick up the load.

15. In addition to driving, Owens was responsible for properly securing the load to the flatbed trailer once it was loaded by IPSCO.

16. Owens arrived at the IPSCO facility in Ambridge, Pennsylvania on May 14, 2012, and waited in the loading area while one of IPSCO's workers used a

crane to lower steel pipes, which had been secured in 3,800 pound bundles by IPSCO's employees, on the flatbed.

17. After IPSCO's staff finished loading the bundles, Owens was attempting to cover the load with a tarp when one of the bundles shifted and rolled off the trailer, landing on Owens ("Subject Accident").

18. According to the underlying complaint, Owens was severely and permanently injured in the incident.

### The Progressive Policy

19. At the time of the subject accident, MADD had a Commercial Auto Policy issued by Progressive, Policy No.:08151396-0, with effective dates of coverage from July 19, 2011 through July 19, 2012 ("Policy"). The Policy states, in pertinent part:

### COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

*******

### YOUR DUTIES IN THE EVENT OF AN ACCIDENT, CLAIM, LOSS OR SUIT

**Notify Us As Soon As Practicable After An Accident Or Loss**

If an insured or **insured auto** is involved in an **accident** or **loss** for which this insurance may apply, the **accident** or **loss** must be reported to **us** as soon as practicable by calling **claims service**, even if the

5

insured is not at fault.  Refer to your policy documents for the claims phone number.

**You** and any person or organization claiming coverage as an insured should provide the following **accident** or **loss** information as soon as it is available:
- time, place and circumstances of the **accident** or **loss** (for example, how the accident happened and weather conditions)
- names and addresses of all persons involved, and of any witnesses;
- the license plate numbers of the vehicles involved; and
- any other facts available concerning the **accident** or **loss**

. . . .

**You** and any person or organization claiming coverage as an insured must:
- assume no obligation, make no payment, or incur no expense without **our** consent, except at the insured's own cost;
- cooperate with **us** in any matter concerning a claim or lawsuit;
- provide any written proof of loss **we** may reasonably require;
  . . . .
- promptly send us any and all legal papers relating to any claim or lawsuit;
  . . . .

## PART I—LIABILITY TO OTHERS
[*italics supplied to reflect policy provisions modified by Georgia Amendatory Endorsement*]

*Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.*

*We agree with you that the insurance provided under your Commercial Auto Policy is modified as follows:*

. . . .

**INSURING AGREEMENT – LIABILITY TO OTHERS**

6

A. *The first paragraph in the Insuring Agreement – Liability to Others section is deleted and replaced by the following:*

*Subject to the limits of liability, if **you** pay the premium for liability coverage, **we** will pay damages, OTHER THAN PUNITIVE OR EXEMPLARY DAMAGES, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident**, arising out of the ownership, maintenance or use of an **insured auto**….*

**We** will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payment after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

*******

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**

A. When used in PART I – LIABILITY TO OTHERS, **insured** means:
 1. **You** with respect to an **insured auto.**
 2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire or borrow, . . . .

 For purposes of this subsection A.2, an **insured auto you** own includes any **auto** specifically described on the **Declarations Page.**

 3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this PART I – LIABILITY TO OTHERS.
*******

7

**EXCLUSIONS – PLEASE READ THE FOLLOWING ECLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

. . . .

3. Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under worker's compensation, unemployment compensation, disability benefits law, or any similar law . . . .

. . . .

5. **Bodily injury** to:
   a. An employee of any **insured** arising out of or within the course of
      (i) That employee's employment by any **insured**; or
      (ii) Performing duties related to the conduct of any **insured's** business;

   This exclusion applies:
   a. Whether the **insured** may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
   . . . .

6. **Bodily injury** to a fellow employee of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business . . .

. . . .

8

8. **Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an insured auto.

9. **Bodily injury** or **property damage** resulting from or caused by the handling of property:
   a. before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
   b. after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**

20. Progressive's Policy also contains an MCS-90 endorsement, which states, in relevant part:

**ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

. . . .

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

. . . .

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

. . . .

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. *Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo* . . . . The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that eth company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement. (Emphasis added.)

## The Underlying Lawsuit

21. On or about May 7, 2013, Owens's sister and now guardian, Vickie Robinson, filed suit against IPSCO in the Court of Common Pleas of Beaver County, Pennsylvania, Civil Division, styled *Vickie Robinson a/k/a/ Vickie Robinson, Guardian of Ted William Owens v. IPSCO Koppel Tubulars Corporation*, *et al*., File No.: 10708-2013 ("Underlying Lawsuit"). (A true and accurate copy of the Complaint in the Underlying Lawsuit was attached to the original Petition for Declaratory Judgment as Exhibit "B.")

22. On or about July 3, 2013, IPSCO answered and joined MADD as a third-party defendant in the Underlying Lawsuit. (A true and accurate copy of

IPSCO's "Complaint To Join Additional Defendant" in the Underlying Lawsuit was attached to the original Petition for Declaratory Judgment Exhibit "C.")

23. IPSCO contends that MADD was negligent in the training and supervision of Owens. (*See generally* Ex. C. attached to the original Petition for Declaratory Judgment.)

24. Progressive first received notice of the Subject Accident on or about July 15, 2013.

25. Progressive issued a Reservation of Rights to its insured to advise of the potential coverage issues. (A true and accurate copy of the Reservation of Rights Letter was attached to the original Petition for Declaratory Judgment as Exhibit "D.")

26. Progressive then retained counsel to defend its insured pursuant to its reservation of rights and coverage defenses.

## COUNT ONE
**(Injuries To Employees)**

27. Progressive incorporates Paragraphs 1 through 26, as though set forth in full herein.

28. Progressive's Policy excludes coverage "for any obligation for which an insured or an insured of that insured. . . may be held liable for worker's compensation, [etc.]" (Exclusion 3) as well as for bodily injuries to an employee while acting in the course and scope of his employment (Exclusion 5).

11

29. IPSCO contends that MADD is liable for "failing to ensure Owens' adherence to safe practices. . . ; failing to properly and adequately maintain and equip the flat-bed trailer operated by Mr. Owens; . . . [and] failing to adequately instruct Mr. Owens on where to stand during the loading of bundles of steel pipes onto a flat-bed trailer." (Ex. C, ¶ 26 attached to the original Petition for Declaratory Judgment.)

30. In effect, IPSCO is implicitly alleging that MADD retained the right to direct the means, method and manner of Owens' work, thereby making Owens an employee of MADD.

31. Thus, according to the third-party Complaint, Owens was an employee, either direct or statutory, MADD at the time of the Subject Accident.

32. Likewise, according to the third-party Complaint, Owens was acting in the course and scope of his employment for MADD at the time of the Subject Accident.

33. However, Progressive's Policy does not provide coverage for damages arising from injuries to employees or for any obligation for worker's compensation.

34. Accordingly, pursuant to 28 U.S.C. § 2201, Progressive seeks a judicial declaration that it has no further coverage obligation with respect to any of

the claims asserted against MADD in the Underlying Lawsuit and the third-party complaint filed therein.

## COUNT TWO
**(Loading By Mechanical Equipment)**

35. Progressive incorporates by reference the allegations contained in Paragraphs 1 through 34.

36. According to the third-party complaint, "employees of IPSCO loaded the shipment of steel pipes onto MADD's flat-bed truck." (Ex. C, ¶ 19 of the original Petition for Declaratory Judgment.)

37. The steel pipes were arranged in bundles weighing approximately 3,800 lbs. per bundle. (Ex. B, ¶ 20 of the original Petition for Declaratory Judgment.)

38. Upon information and belief, IPSCO loaded the bundles onto the flat-bed by use of mechanical equipment.

39. In the course of the loading process, Owens was attempting to secure and cover the shipment when one of the bundles "weighing approximately 3,800 pounds [fell] onto [Owens]." (Ex. B, ¶ 20 of the original Petition for Declaratory Judgment.)

40. However, Progressive's policy excludes coverage for damages "resulting from or caused by the movement of property by a mechanical device . . . not attached to an insured auto."

41. Accordingly, pursuant to 28 U.S.C. § 2201, Progressive seeks a judicial declaration that it has no further coverage obligation with respect to any of the claims asserted against MADD in the Underlying Lawsuit and the third-party complaint filed therein.

## COUNT THREE
**(Late Notice)**

42. Progressive incorporates by reference the allegations contained in Paragraphs 1 through 41.

43. The Subject Accident occurred on or about May 14, 2012.

44. Pursuant to the plain language of the Policy, an insured seeking coverage under the Policy is required to provide notice of a claim and supporting factual information "as soon as it is available."

45. Additionally, any person claiming coverage as an insured is required to "promptly send [Progressive] any and all legal papers relating to any claim or lawsuit."

46. However, Progressive first received notice of the Subject Accident and the resulting lawsuit on July 15, 2013.

47. The notice provisions are conditions precedent to coverage.

48. Because MADD failed to comply with the Policy's unambiguous notice provisions, Progressive is relieved of any further coverage obligation with respect to the claims asserted in the Underlying Lawsuit.

14

49. Accordingly, pursuant to 28 U.S.C. § 2201, Progressive seeks a judicial declaration that it has no further coverage obligation with respect to any of the claims asserted against MADD in the Underlying Lawsuit and the third-party complaint filed therein.

### COUNT FOUR
### (MCS-90)

50. Progressive incorporates by reference the allegations contained Paragraphs 1 through 49.

51. In accordance with federal law, Progressive's Policy contains an MCS-90 endorsement.

52. An MCS-90 endorsement is a federally mandated endorsement to motor carrier insurance policies. See 49 C.F.R. § 387.7(a) (directing that "[n]o motor carrier shall operate a motor vehicle until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in § 387.9 of this subpart); see also 49 C.F.R. § 387.7(d) (stating that proof of the required financial responsibility consists of a Form MCS-90 issued by an insurer).

53. The minimum level of financial responsibility for interstate carriers of nonhazardous property is $750,000. 49 C.F.R. § 387.9.

54. Pursuant to the statute, the MCS-90 minimum financial responsibility applies only to public liability, property damage and environmental restoration.

55. In accordance with federal law, Progressive's Policy contains an MCS-90 Endorsement.

56. Progressive's MCS-90 endorsement explicitly states that its purpose is to cover claims arising out of public liability, and "does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo."

57. The injuries at issue in this case were sustained by an employee of Progressive's insured.

58. Accordingly, Progressive's MCS-90 endorsement does not provide coverage for the claims arising from the Subject Accident.

59. Accordingly, pursuant to 28 U.S.C. § 2201, Progressive seeks a judicial declaration that it has no further coverage obligation with respect to any of the claims asserted against MADD in the Underlying Lawsuit and the third-party complaint filed therein.

## **RELIEF REQUESTED**

WHEREFORE, Progressive respectfully requests that the Court enter judgment declaring the rights and obligations of the parties as follows:

(a) That the claims against MADD Transportation, LLC contained in the Underlying Lawsuit and the third-party complaint filed therein are

excluded from coverage in their entirety because Owens was an employee of MADD at the time of the Subject Accident;

(b) That the claims against MADD Transportation, LLC contained in the Underlying Lawsuit and the third-party complaint filed therein are excluded from coverage in their entirety because the injuries arose from the loading of a flat-bed trailer by use of mechanical equipment;

(c) That the claims against MADD Transportation, LLC contained in the Underlying Lawsuit and the third-party complaint filed therein are excluded from coverage in their entirety because MADD failed to provide timely notice of the Subject Accident or the resulting lawsuit, which are conditions precedent to coverage;

(d) For trial by jury; and

(e) For such other and further relief as the Court may deem proper, together with costs, attorneys' fees and disbursements of this action.

[*Signature appears on the following page*]

Respectfully submitted, this 20th day of February, 2014.

                                        CARLOCK, COPELAND & STAIR, LLP

                                        /s/ Erica L. Parsons
                                        FRED M. VALZ, III
                                        Georgia State Bar No. 723379
                                        Email: fvalz@carlockcopeland.com
                                        ERICA L. PARSONS
                                        Georgia State Bar No. 100152
                                        Email: eparsons@carlockcopeland.com

191 Peachtree Street NE
Suite 3600
Atlanta, Georgia 30303
Tel.: (404) 522-8220
Fax: (404) 523-2345

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

| | |
|---|---|
| Joseph H. Barrow<br>Barrow & Ballew, PC<br>P. O. Box 8186<br>Savannah, GA  31412<br>jbarrow@barrowandballew.com<br>*Attorney for MADD Transportation, LLC* | Thomas L. Feher<br>Thompson Hine, LLP<br>127 Public Square<br>3900 Key Center<br>Cleveland, OH  44115<br>tom.feher@@thompsonhine.com<br>*Attorney for IPSCO Koppel Tubulars, LLC* |
| J. Christopher Fox<br>Thompson Hine, LLP<br>Two Alliance Center<br>3560 Lenox Road, Suite 1600<br>Atlanta, GA  30326<br>chris.fox@thompsonhine.com<br>*Attorney for IPSCO Koppel Tubulars, LLC* | Vickie Robinson<br>P.O. Box 381<br>Woodruff, SC 29388 |

[*Signature Appears on the Following Page*]

Respectfully submitted this 20th day of February, 2014.

> Respectfully submitted,
>
> CARLOCK, COPELAND & STAIR, LLP
>
> By: /s/ Erica L. Parsons
> ERICA L. PARSONS
> State Bar No.: 100152
> eparsons@carlockcopeland.com
>
> *Attorneys for Plaintiff Progressive Mountain Insurance Company*
> 191 Peachtree Street, NE
> Suite 3600
> Atlanta, Georgia 30303
> 404-522-8220