IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PROGRESSIVE MOUNTAIN )
INSURANCE COMPANY, )
 )
 Plaintiff, )
 )
v. ) CASE NO. CV413-254
 )
MADD TRANSPORTATION, LLC; )
VICKIE ROBINSON, a/k/a Vickie )
Robinson as guardian of Ted )
Owens; and IPSCO KOPPEL )
TUBULARS, LLC; )
 )
 Defendants. )
 )

**ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 53.) Defendants[1] Madd Transportation, LLC ("Madd") and IPSCO Koppel Tubulars, Inc. ("IPSCO") have filed responses in opposition (Doc. 57, Doc. 59), to which Plaintiff has filed a reply (Doc. 61). For the following reasons, Plaintiff's motion is **GRANTED**. All other pending motions in this case are **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

---

[1] Defendant Robinson has not made an appearance in this case and is presently in default. (Doc. 26.)

# BACKGROUND

This action arises out of an injury sustained by Ted Owens, a truck driver for Defendant Madd.[2] (Doc. 58 ¶ 1.) Defendant Madd is a Georgia-based interstate motor carrier in the business of transporting goods for other companies on its tractor-trailers. (Id. ¶¶ 1-2.) However, Defendant Madd does not own its own tractor-trailers, but rather leases them from its President Mark Williams and Operational Manager Andre Doyle. (Id. ¶ 3.) These tractor-trailers are then used by drivers—such as Mr. Owens—who pick up and transport loads pursuant to assignments from Defendant Madd.[3] (Id. ¶¶ 3, 11.) Drivers have the option of either accepting or rejecting an assignment from Defendant Madd. (Id. ¶ 13.) Defendant Madd does not withhold taxes from their drivers' wages or pay premiums for the driver's worker's compensation coverage. (Id. ¶ 10.)

---

[2] For the purposes of ruling on Plaintiff's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Defendants. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

[3] While it is not entirely clear from the parties' briefs, the Court assumes that Mr. Owens and the other drivers own their own trucks, but not the trailers themselves. In any case, this issue ultimately proves immaterial to the Court's analysis.

The incident from which this case arises occurred on or about May 15, 2012. (Id. ¶¶ 17-18.) Mr. Owens had accepted an assignment from Defendant Madd to transport several bundles of large metal pipes from Defendant IPSCO's facility in Ambridge, Pennsylvania to another destination. (Id. ¶¶ 16-18.) Pursuant to that assignment, Mr. Owens drove from Georgia and arrived at Defendant IPSCO's facility to pick up the load. (Id. ¶ 17-18.) After Mr. Owens positioned the tractor-trailer next to a loading platform, one of Defendant IPSCO's employees used a crane to load eight bundles of metal pipe onto Mr. Owens's tractor-trailer. (Id. ¶ 19-22.) After the eighth bundle of pipe was loaded, Mr. Owens moved between the loading platform and the trailer flatbed to throw securement straps over the bundles. (Id. ¶¶ 23-24, 32.) The eighth bundle remained stationary for roughly forty-five to sixty seconds, but eventually fell off the trailer and struck Mr. Owens. (Id. ¶¶ 26, 33.) As a result, Mr. Owens suffered significant injuries. (Id. ¶ 33.)

At the time of the incident, Defendant Madd held a Commercial Auto Policy with Plaintiff (the "Policy"). (Id. ¶ 34.) The Policy stated, in part, that "[if] an insured

auto is involved in an accident or loss for which this insurance may apply, the accident or loss must be reported to [Plaintiff] as soon as practicable . . . ." (Id. ¶ 35.) The Policy also provided an exclusion from coverage for "[b]odily injury to an employee of any insured arising out of or within the course of that employee's employment by any insured; or [p]erforming duties related to the conduct of any insured's business . . . ." (Id.) The Policy further stated that the exclusion applied "whether the insured may be liable as an employer or in any other capacity." (Id.) In addition, the policy provided an exclusion for "[b]odily injury or property damage resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an insured auto." (Id.)

On or about May 7, 2013, Mr. Owens's sister and guardian Vickie Robinson filed suit against Defendant IPSCO in Pennsylvania state court. (Id. ¶ 38.) Defendant IPSCO in turn joined Defendant Madd as a third-party defendant in the underlying suit and asserted a crossclaim alleging that Defendant Madd negligently trained and supervised Mr. Owens. (Id. ¶¶ 39-40.) Defendant Madd subsequently notified

4

Plaintiff of the accident and the underlying suit in July of 2013. (Id. ¶ 37.)

Plaintiff provided Defendant Madd a defense in the underlying suit under a reservation of rights. (Id. ¶¶ 42-43.) Plaintiff then filed suit in this Court seeking a declaratory judgment that, under the terms of the Policy, it had no duty to defend or indemnify Defendant Madd in the underlying suit.[4] (Doc. 24.) In its Motion for Summary Judgment, Plaintiff argues that Defendant Madd failed to provide timely notice of the incident to Plaintiff—a condition precedent for the Policy to apply. (Doc. 53, Attach. 1 at 11.) In addition, Plaintiff argues that even

---

[4] Both Defendant Madd and Defendant IPSCO have filed Motions to Dismiss or Stay with regard to Plaintiff's duty to indemnify, arguing that because the underlying suit is still pending, the issue of indemnification is not yet ripe for review. (Doc. 39; Doc. 48.) Defendants are correct that a duty to defend is separate from a duty to indemnify. See City of Atlanta v. St. Paul Fire & Mar. Ins. Co., 231 Ga. App. 206, 208, 498 S.E.2d 782, 785 (1998). However, the resolution of Plaintiff's duty to defend is so inextricably intertwined with its duty to indemnify that finding an absence of any duty to defend is dispositive of both issues. See, e.g., Phila. Indem. Ins. Co. v. Yachtsman's Inn Condo Ass'n, Inc., 595 F. Supp. 2d 1319, 1322 (S.D. Fla. 2009) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") Accordingly, practicality and judicial economy warrant the exercise of this Court's discretion to provide a declaratory judgment with respect to both Plaintiff's duty to defend and duty to indemnify. See

5

if the Policy is effective, coverage for the incident is precluded by either the mechanical device or employee exclusions referenced above. (Id. at 13, 16.) Defendants respond that Defendant Madd had no reason to suspect or believe that the incident would lead to any potential claim against Madd, excusing any delay in reporting the incident. (Doc. 57 at 4; Doc. 59, Attach. 1 at 5.) Furthermore, Defendants contend that the mechanical device exclusion is inapplicable because it is presently impossible to determine the cause of the pipe bundle's fall. (Doc. 57 at 7; Doc. 59, Attach. 1 at 11.) Finally, Defendants argue that the employee exclusion does not preclude coverage because Mr. Owens was an independent contractor and, in any case, the determination of Mr. Owens's employment status should be left for the underlying suit (Doc. 57 at 9; Doc. 59, Attach. 1 at 14-16.)

**ANALYSIS**

I. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which

---

Edwards v. Sharkey, 747 F.2d 684, 686 (11th Cir. 1984).

summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

> demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. EMPLOYEE EXCLUSION

The Court first addresses whether Plaintiff owes a duty to defend or indemnify Defendant Madd despite the Policy's exclusion for injuries to Defendant Madd's employees. The Policy expressly excludes "[b]odily injury to an employee of any insured arising out of or within the course of that employee's employment by any insured; or [p]erforming duties related to the conduct of any insured's business . . . ." (Doc. 53, Attach. 1 at 7-8.) According to Plaintiff, Mr. Owens is a statutory employee of Defendant Madd for purposes of the Policy and thus no coverage should exist. (Id. at 17-18.) Specifically, Plaintiff states that the Policy is governed by the Federal Motor Carrier Safety Regulations ("FMCSR"), which include independent contractors as employees for insurance purposes. 49 C.F.R. § 390.5 (2014).

Defendants respond that Mr. Owens's employment status is an issue that will be resolved in the underlying suit. (Doc. 57 at 9; Doc. 59, Attach. 1 at 16.) In addition, Defendant Madd contends that Defendant IPSCO's third-party complaint in the underlying suit clearly alleges that Mr. Owens was not covered by the Policy's exclusion because he

9

was an independent contractor. (Doc. 59, Attach. 1 at 14-16.) Furthermore, Defendant Madd argues that Georgia law governs the terms of the Policy and the nature of Mr. Owens's work demonstrates that he is, in fact, an independent contractor according to Georgia's common law definition of that term. (Id.)

With regard to Mr. Owens's employment status being determined in the underlying suit, the Court finds Defendants' arguments off point. The issue before the Court is whether Mr. Owens qualifies as an "employee" under the terms of the Policy, not whether he is Defendant Madd's employee for purposes of establishing liability for negligent hiring or supervision. Because the Court is concerned with interpretation of the Policy's language, the Court finds the prospective determination of Mr. Owens's employment status in the underlying suit immaterial to this case. Furthermore, Defendant IPSCO's reference to Mr. Owens as an independent contractor in its third-party complaint is not dispositive of the issue. It is true that the Court looks at the facts alleged in Defendant IPSCO's third-party complaint to determine whether Plaintiff owes any duty pursuant to the Policy. See HDI-Gerling Am. Ins. Co. v.

Morrison Homes, 701 F.3d 662, 666 (11th Cir. 2012) ("[T]he issue is not whether the insured is actually liable . . . in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage."). However, Plaintiff concedes that while Mr. Owens may qualify as an independent contractor, he nevertheless may still be considered an employee for purposes of the Policy.

The Policy does not include any separate definition of "employee," therefore the Court must determine what the term means for purposes of the Policy. The Court agrees with Defendant Madd that the contract is interpreted pursuant to Georgia law.[5] "[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the complaint." Hoover v. Maxum Indem. Co., 291 Ga. 402, 407-08, 730 S.E.2d 413, 418 (2012). To avoid a duty to defend or indemnify, the allegations of the complaint must unambiguously exclude

---

[5] A district court applies the choice of laws rules of the state in which it sits. Georgia uses the rule of lex loci contractus when interpreting insurance contracts, which holds that a contract is subject to the substantive law of the state in which it was made—in this case, Georgia. Fed. Ins. Co. v. Nat'l Dist. Co., 203 Ga. App. 763, 765, 417 S.E.2d 671, 673 (1992).

coverage under the policy. JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., 311 Ga. App. 269, 271, 717 S.E.2d 219, 223 (2011). " 'Thus, the issue is not whether the insured is actually liable to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.' " Bituminous Cas. Corp. v. N. Ins. Co. of N.Y., 249 Ga. App. 532, 533, 548 S.E.2d 495, 497 (2001) (quoting Penn-Am. Ins. Co. v. Disabled Am. Veterans, 224 Ga. App. 557, 558, 481 S.E.2d 850, 851 (1997)). However, if the complaint does not assert a claim covered by the Policy, Plaintiff is justified in refusing to provide both a defense and indemnification in the underlying suit. City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga. App. 206, 208, 498 S.E.2d 782, 785 (1998).

Although Georgia law applies to interpretation of the Policy, it does not follow that Georgia's common law distinction between independent contractor and employee has any bearing on the terms of the Policy. Interstate motor carriers are required to hold a minimum level of liability insurance. See Motor Carrier Safety Act of 1984, 49 U.S.C.

§ 13906 (2000); 49 C.F.R. § 387.1. Notably, however, the FMCSR "do[] not require motor carriers to obtain coverage for 'injury to or death of [their] employees while engaged in the course of their employment.' " Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc., 307 F.3d 362, 366 (5th Cir. 2002) (quoting 49 C.F.R. § 387.15). As a result, a majority of courts have relied on the FCMSR's language to interpret provisions of insurance policies drafted in compliance therewith, particularly employee exclusions. See, e.g., Ooida Risk Retention Grp., Inc. v. Williams, 579 F.3d 469, 473 (5th Cir. 2009) ("The [FMCSR] govern the meaning of terms under insurance policies designed to comply with federal requirements for motor carriers."); Consumers Cnty., 307 F.3d at 366 ("In light of the clear intention of the parties to comply with federal regulations and the broad application of § 390.5 throughout those regulations, it is reasonable to conclude that the parties intended § 390.5 to supply the definition of the term employee in the policy."); Perry v. Harco Nat. Ins. Co., 129 F.3d 1072 (9th Cir. 1997) (FMCSR's definition of employee controlling where policy included federally-mandated endorsement). But see, e.g., Gramercy Ins. Co. v.

13

Expeditor's Exp. Inc., 575 F. App'x 607, 609 (2014) (insurance policy's amendment to comply with FMCSR did not alter policy's original definition of employee). These courts reason that interstate motor carrier insurance contracts adopt the FMCSR's definitions, unless the policy specifically states otherwise, because the federal law's underlying intent was to eliminate the common law distinction between independent contractors and employees. See, e.g., Luizzi v. Pro Transp., Inc., 2013 WL 3968736, at *29 (E.D.N.Y. July 31, 2013) (unpublished).

While the Eleventh Circuit has not addressed this issue directly, the Court finds using the FMCSR to determine the parties' intent entirely appropriate in this case. Defendants do not dispute that the Policy was designed specifically in accordance with the FMCSR, nor do they dispute that Defendant Madd is an interstate motor carrier subject to federal insurance requirements and regulations. In addition, the Court notes that Georgia has specifically adopted the FMCSR into its administrative code. Ga. Code. Ann. § 515-16-4.01 (2015) ("The [FMCSR] . . . contained in Title 49 of the Code of Federal Regulations, Parts 350, 382, 383, and 390 through 397, as

now in force and as hereafter amended . . . are by this Rule made Transportation Rules of this Commission for all carriers regulated by this Commission."). Courts have considered a state's adoption of the FMCSR indicative of the parties' intent to use the federal definitions in their insurance contracts. See, e.g., Lancer Ins. Co. v. Newman Specialized Carriers, Inc., 903 F. Supp. 2d 1272, 1270-80, (holding independent contractor as employee where FMCSR adopted into Alabama's regulatory code). Also, courts have declined to read the FMCSR's definition of a statutory employee into insurance policies such as this one only where those policies include separate definitions of "employee." See, e.g., Gramercy, 575 F. App'x at 608 (distinguishing case because insurance policy included separate definition of "employee"); Northland Cas. Co. v. Rocky Harrell, 2007 WL 2319863 (E.D. Ark. Aug. 9, 2007) (unpublished). As stated above, such is not the case here.

Finally, the Policy includes the federally-mandated MCS-90 endorsement, which states that the Policy "does not apply to injury or death of [Defendant Madd's] employees while engaged in the course of their employment." (Doc. 59, Attach. 3 at 61.) As the Ninth Circuit correctly pointed

out in Perry, the MCS-90 endorsement's language is explicitly dictated by federal law and governed by the FMCSR. 129 F.3d at 1074-75; see also 49 C.F.R. § 387.15 (MCS-90 form endorsement to be included in interstate motor carrier's insurance policy). Under Georgia law, "every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy." O.C.G.A. § 33-24-16. An endorsement's language controls where there is any conflict between it and an original policy because it is the more current expression of the parties' intent. See Utica Mut. Ins. Co. v. Dunn, 106 Ga. App. 877, 878 (1962). As a result, it would defy logic and Georgia law for the Policy to include distinct definitions of the term "employee" in the endorsement and the rest of the Policy. See Consumers Cnty., 307 F.3d at 366 (" '[E]mployee' should not be given different meanings under an insurance policy depending on the context in which it is used.") Accordingly, the Court concludes the FMCSR's statutory definition of an employee is the correct standard to use in interpreting the Policy.

According to the FMCSR, an "employee" is

> any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety. Such term includes a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle), a mechanic, and a freight handler. Such term does not include an employee of the United States, any State, any political subdivision of a State, or any agency established under a compact between States and approved by the Congress of the United States who is acting within the course of such employment.

49 C.F.R. § 390.5 (2014). Defendants rely entirely on their contention that Mr. Owens is an independent contractor to avoid the Policy's employee exclusion. However, § 390.5 expressly includes independent contractors in its description of employees. In addition, it is undisputed that Mr. Owens was working as a truck driver for Defendant Madd at the time of the incident.[6] As the Eleventh Circuit has stated, "federal law creates a statutory employment

---

[6] Courts have diverged as to whether an independent contractor truck driver is a statutory employee under § 390.5 when not driving the vehicle. Compare Pouliot v. Paul Arpin Van Lines, Inc., 292 F. Supp. 2d 374, 382 (D. Conn. 2003) (holding driving vehicle is synonymous with "operating" vehicle) with Lancer, 903 F. Supp. 2d at 1280 (holding independent contractor truck driver statutory employee under § 390.5 while unloading vehicle). However,

17

relationship between interstate carriers and the drivers of the trucks leased to them." Judy v. Tri-state Motor Transit Co., 844 F.2d 1496, 1501 (1988). As such, the Court finds Mr. Owens was a statutory employee under 49 C.F.R. § 390.5 and would still be excluded from the Policy even if Defendants' contentions are correct. Plaintiff, therefore, has no duty to defend or indemnify Defendant Madd in the underlying suit because Mr. Owens falls within the Policy's employee exclusion. Accordingly, the Court need not address the other arguments contained in Plaintiff's Motion for Summary Judgment.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 53) is **GRANTED**. All other pending motions in this case are **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 27th day of March 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

Defendants raise no argument on this matter. Accordingly, the issue is moot.